This number 13-2494, United States of America v. Raymond Lamont Cheatham, all parties must proceed to the table at your side. We will celebrate the... Good morning, your honors. May it please the court. On leave of court, I'd like to reserve five minutes for my rebuttal time. All right. My name is Jeanne Francis Long. I'm here on behalf of the United States. The issue before the court today is the district court's error in suppressing a firearm, drugs, and drug paraphernalia found on or near Mr. Cheatham. The district court erred in suppressing the evidence because the evidence was seized as the result of a lawful traffic stop. The Fourth Amendment authorizes a traffic stop, a Terry stop, on probable cause of a traffic violation. A passenger is lawfully stopped with the vehicle. He is seized under the Fourth Amendment. As a categorical matter, the Fourth Amendment authorizes police officers conducting a traffic stop to order the passenger out of the vehicle pending completion of the stop. And the Fourth Amendment further empowers the officers to identify, ask some questions of the passenger, and engage in additional activities. You know, Judge Neff, in her opinion, indicated that the driver was the subject of the stop, and he admitted to a misdemeanor of having his taillight out, or an ordinance violation, or whatever it was, and then he didn't have a license, and he was arrested. And at that time, the traffic stop was over. They didn't find any drugs or firearms on him. So, according to Judge Neff, the traffic stop was then completed, and then the officers proceeded to deal with the passenger, who is the defendant here, and then there were subsequent events. He ran, and he was apprehended, and all that. So, based upon the opinion of the district judge below, the suppression was called for because there's no reason to interrogate or apprehend or seize Mr. Cheatham. What do you say to that? Your Honor, the district court erred in concluding as a matter of law that the traffic stop was complete at the time that the officers arrested the driver and placed him in the patrol car. The question of when a traffic stop is complete is a question of law. It's reviewed by the court de novo, and the government is simply aware of no authority holding that arrest of a driver is a completion of a traffic stop. To the contrary, Supreme Court, in this court's precedent, holds that when police officers conducting a Terry stop discover reasonable suspicion or probable cause of a criminal matter, that that discovery expands the scope of the seizure and the stop under the Fourth Amendment. It doesn't restrict it. So here, the fact that the officers had arrested the driver and placed him in the car for officer safety, as a matter of law, simply does not end the traffic stop. If arresting the driver doesn't end the traffic stop, what does? Well, Your Honor, among other things, issuing a traffic citation at a very broad level... So arresting them doesn't end the traffic stop, but issuing a ticket would? Well, Your Honor, in United States v. Step, this court has noted that a traffic stop is not complete until a citation is issued. At a broader level, under the Fourth Amendment, in Florida v. Royer, for example, the Supreme Court held that a Terry stop continues as long as necessary to effectuate the purposes of the stop. And if arrest ends up being the resolution of the purposes of the stop, why doesn't that resolve the issue? Well, here, Your Honor, because arrest on the criminal misdemeanor simply didn't complete the traffic stop. One, as a practical matter, police are having their discretion, the ability to un-arrest someone, if you will. So the fact that someone has been arrested does not mean that that's the conclusion of the encounter with the police. Here, as a matter of... I'm kind of struggling with that, Counselor, because then any time the police arrest somebody, they get to keep on going with whatever they're involved in because they can subsequently un-arrest them? Well, not necessarily, Your Honor. I don't think we have to go quite that broad here. Here we have, in the exhibit submitted to the District Court and this Court as part of the suppression hearing, we have the audio recording of the traffic stop from the dash camera. In addition to Officers Butler's testimony, who testified at the evidentiary hearing, and he said, you can hear him clearly on the video, he tells the gentleman as he's walking him to the patrol car, do you have too many tickets, what's the story on your suspension, the driver isn't sure, and he says, well, I'm going to look into that, I'm going to check it, and we'll see what we have to do. Sometimes I can write just an issue or a summons, I can let you go. Sometimes we have to go to jail, we'll see what we have to do, I'll double-check on that. So arrest just isn't the end of the question for a seizure under the Fourth Amendment. There are times when it might be, Your Honor, this isn't that case. And here the defendant was arrested for the traffic offense of not having a valid license? The criminal misdemeanor, Your Honor. Traffic misdemeanor? Yes. And once that gentleman is arrested and taken into custody, the traffic stop's not over because the police officer has to deal with the car with an unlicensed driver, is that right? At the very least, Your Honor, it was. It was around 10.30 at night, the car was running, the lights were on, the door was open. Well, if you arrest somebody for no driver's license, you've got to deal with the car. Typically they impound it. That's correct. That is correct, Your Honor. Is that why the traffic stop had not ended? Well, that is one of many reasons, Your Honor. The other is because he could have un-arrested him? Well, more specifically because he hadn't completed the basic police diligence that's part and parcel of a traffic stop. The officers hadn't yet identified the passenger or the driver. They hadn't run a computer check on him. They hadn't verified his identity or his license. These are all things that this court and the Supreme Court have held are basic parts of police diligence that are necessary. You indicated that the law permits an officer to order a passenger out of the car? Yes, Your Honor. The Fourth Amendment does categorically permit officers to order a passenger out of a car pending completion of a traffic stop. Even when there are no drugs or weapons that have been discovered? Absolutely, Your Honor. With no reasonable suspicion particular to the passenger at all. That's Maryland v. Wilson, Your Honor. Does that include ordering the passenger out of the car and requiring that he put his hands above his head and submit to a pat-down? Well, Your Honor, we didn't ever get to a point where there was a pat-down in this matter. That's a side issue that we need not address here. The Fourth Amendment categorically... But you did get to ordering him out and telling him to place his hands above his head and interlace his fingers, correct? And that, as a matter of officer safety, was permitted under the Fourth Amendment in these circumstances. Doesn't your argument run into problems based upon the Supreme Court's holding in Arizona v. Johnson? Your Honor, I'm not familiar with that particular holding. Well, that's a recent case. At least it comes from 2009 where the Supreme Court held that officers may not proceed to frisk the driver or any of the passengers absent reasonable suspicion that the individual is armed and dangerous. Was there any basis for any suspicion here that the passenger was armed and dangerous before the officers proceeded with him? Well, I have a two-part answer to that, Your Honor. First, the United States v. Johnson on that understanding is inapplicable. Arizona v. Johnson. Arizona v. Johnson is inapplicable because the police officers didn't frisk. You said you hadn't read the case. But I trust your assessment of it, Your Honor. Understanding that it's a matter of not being able to frisk an individual without reasonable suspicion, it's an apposite here because there was no frisk of Mr. Cheatham prior to his flight and subsequent detention, at which point the officers absolutely had reasonable suspicion. Flight from a lawful traffic stop gives reasonable suspicion, particular to that individual. Well, that was after they had engaged with him and based upon the belief that they did have the right to, presumably based upon their thinking that they had the right to frisk or examine him, Arizona v. Johnson would seem to say that they should have left him alone if they didn't have any reasonable suspicion that he was armed and dangerous. Well, Your Honor, the second part is that Officer Nevins did develop reasonable suspicion during the pendency of the stop. But the key here is that they were permitted to order him out of the car without reasonable suspicion under Maryland v. Wilson. They didn't, in fact, frisk him. They ordered him out and they asked him to lace his fingers above his head as a matter of officer's safety. The Fourth Amendment permits that. And at that point, Mr. Cheatham fled. There was no frisk prior to his flight. Indeed, to my knowledge, there was no frisk ever of Mr. Cheatham. Ultimately, the officers chased him down. And during that tussle, he struggled for a weapon, and weapons and drugs sort of fell out of his pockets and were in his hand. And yet before that developed, I mean, you really argued to the district judge, apparently. You overstated the law. The law is that an officer could constitutionally, in every single case, pull over a car, and if it's got six nuns in it, make every one of those nuns get out and lace their fingers on top of their heads and pat them down. You've got a valid traffic stop. Everybody can be ordered out. They can all be patted down. That's what the government lawyers argued in front of the district judge. Your Honor, my understanding of the law, at least the pat-down portion of that without reasonable suspicion, is an inaccurate statement of the law. But the statement that they may be ordered out, passengers and occupants of a lawfully stopped vehicle, may be ordered out and may be ordered to lace their fingers above their head for officer safety, is a correct statement of the law under the Fourth Amendment. Where do you get the latter requirement? From a general reasonableness in terms of officer safety. When we're looking at reasonableness under the Fourth Amendment, that is the touchstone. Officer safety is a core concern. So that's a judge conclusion as to whether it's reasonable? Yes, Your Honor. It is a question of law. And what did the judge say here? Well, here, Your Honor, ultimately the district court suppressed the evidence. But as a matter of law, that conclusion was that holding is an error. For the reasons we've discussed here, the traffic stop was not complete at the time that the... But going back to the question of what can you do, we are bound or effectively bound to accept the district judge's credibility determinations. Correct? Well, it certainly would be a clear error review. Here, I just first, on the issue of credibility, the district court expressed some reservations but expressly stated that Officer Nevins didn't overplay his hand. And ultimately, at the very outset of her opinion, said that the facts were essentially not in dispute. Here, they're just even taking as true the court's factual conclusions, on the whole, the law is still clear. The fact of placing a driver under arrest and putting him in the patrol car for officer safety pending completion of the stop, that simply doesn't end the traffic stop. And indeed, here, the officers did go back. They issued the traffic citation. They ran the check on the driver. They identified him. They double-checked his suspension. The officers engaged in the remainder of police diligence. That's part and parcel of a traffic stop, and ultimately issued the traffic citation once Mr. Cheatham had been brought under control and officer safety was restored. And took him to jail? Both of them? Yes, Your Honor. They did take both the driver and the passenger to jail. I see that you're out of time. Thank you, Your Honor. Thank you. May it please the Court, my name is Jasna Tosic. I represent Mr. Cheatham. Applying a proper standard of review, a district court judgment should be affirmed here. What we know here is that these officers are on something called special response team, so their real goal is to go out, and they testify to that, make as many stops as possible, make as many contacts as possible. And I think they exploited the situation for the purpose of that goal. There is no question that car was initially stopped for traffic violation, which was inoperable taillight. What we see throughout this encounter with the driver is a complete compliance. He immediately pulled over. He immediately and readily admitted he didn't have a driver's license. At that point, he was taken out of the car. He was patted down. He was arrested. He was searched. He was placed in a cruiser and locked in a cruiser. And at that point, the purpose of the traffic stop was completed. While the stop is ongoing, the Supreme Court said the officer may order passengers out of the car for the police safety. But here, the purpose was completed. That does not mean that they cannot deal with the situation. And as the district court said, all they were permitted to do was to approach the passenger, tell him what's going on, tell him that they're impounding the car, and they're free to go. At that point, because the traffic stop was completed, they had no right to order him out of the car with his hands up and his fingers interlocked. And interestingly, the officer admitted that had it been a district court judge that was in the same situation, and she's a white female, that officer maybe would not have dealt with her the same way that they were dealing with Mr. Cheatham. Because the purpose of the traffic stop was accomplished, officer could not order Mr. Cheatham out of the car. And nothing happened. Could the officer not have ordered him out of the car? Or could the officer not have required him to interlace his fingers? Or could the officer not have patted him down? Where is the line? They definitely could not order him out with his hands up and his fingers interlocked. Could they order him out of the car? The Supreme Court said they could order while the stop is pending, pending completion of the stop. And here, the purpose of the stop was completed. So the way they did it, the way they ordered him out of the car, that was unconstitutional. Also, nothing happened during this stop that would raise a reasonable suspicious about Mr. Cheatham. The officer testified, Officer Butler testified, and nothing Mr. Cheatham did or say raised his suspicious in any way. Officer Nevins, who was the one standing by Mr. Cheatham's side, also testified that he didn't think he was doing anything suspicious other than he mentioned this slight nervousness, also that he patted his pocket at one point, which he testified indicated to him that he might have had something illegal. At that point, he's permitted to order him out of the car and put his hands over his head. It's officer safety at risk. Somebody's patting their pocket. If these circumstances raised to the level of a reasonable suspicious, which the district court found, they did not. She found that this claim of nervousness was really based on the fact that Mr. Cheatham was not making an eye contact, which this court several times said just not making an eye contact is really not a reason to suspect a person of doing something criminal. In addition to that, the officer- She said it a bit differently than that. She said that the officer was behind Mr. Cheatham and he would have had to turn his head around to make eye contact. And that, too, he- So she said that was one thing she also said. Also, she said that officers didn't really dwell on this much, didn't overplay that nervousness thing, and she seemed to also kind of a little bit- Let me ask you this. Even if they should not have- Even if the officers should not have ordered Mr. Cheatham out of the car, once he took off running, doesn't that-would that somehow negate any illegality of the frisk or pat-down that they had in mind to do and make the whole search legal because he had tried to obstruct the police by running? Well, the district court found that it did not. That this was not attenuating circumstance in dissipating the taint of illegal seizure. First, it occurred after Mr. Cheatham was already seized. So it cannot retroactively sort of supply the reasonable suspicion. Second- Well, I guess I'm asking if there's any case law on that issue that you know about. There is no, that I know, published Sixth Circuit opinion addressing the issue directly. There are several unpublished opinions, and there are some opinions which kind of raised the issue but didn't really decide it. There is an opinion, for instance, United States v. Castillo, that Judge Clay was on a panel. In that case, the defendant was fleeing from the officer at high speed, reckless driving, which was a new crime that he committed. So if the response to illegal arrest is a new crime, the police certainly has a right to pursue that new crime. And in that case, it was a high-speed reckless driving that violated several tenancy ordinances and statutes. But in this case, Mr. Cheatham's flight from the officer is not a new crime. The government argued in the district court that that violates the obeying a police officer ordinance. But she found, as a matter of the fact, that there was no order to Mr. Cheatham to stop. So he did not really disobey any order. And second, in Michigan, people, citizens have a right to disobey illegal police contact. They have a right to resist. And that is what the Michigan Supreme Court held in People v. Moreno, that the statute that requires the people to not disobey the order didn't abrogate a common law right to disobey. For instance, in Jefferson, where Judge Clay was also on the panel, there was a flight and a use of force against the officer. So that force, where the defendant was punching and kicking the police officer, that was a new crime. And also, there was a tenancy case, but the tenancy law says that it is not defense to the disobeying and resisting police officer the fact that the police officer conduct is illegal. That is indifference to Michigan law, which specifically the common law gives the right to do that. So the citizen, American citizen, at least in Michigan, doesn't have to put up with illegal police conduct. And we have to be mindful, if we allow that, where that line would be. If the police officer is beating a suspect, does the suspect have to submit to that? If the police officer is harassing a person, does the person have to submit that, lest he be considered suspicious and tackled and arrested? I understand your point. What did you say about who testified that the arrest would not have occurred this way if it were a white female? A district court judge asked the police officer if she was in the same situation driving with her husband, who was stopped for driving with inoperable light, which she said God knows happened often, would he be ordered out of the car, searched, arrested, and placed in a police cruiser, to which the officer stated he might or might have not been. And she then asked, would you then approach me and order me out of the car, with my hands raised up and my fingers interlocked, to which the officer responded, it depends if there was something else that would indicate that there was a suspicious, to which the district court judge, but this is the same situation as here. You testified that nothing happened to indicate that there was anything else other than a traffic stop. We also have a situation, there was a, going back to your question, Judge Clay, United States versus Moore, which I also believe you were on that panel too, that the government cited in their brief, and that is an inapposite case, for the same reason that the search began before defendant fled, so it couldn't provide a justification for a search, which is the same here. He was seized illegally before he fled, and in that case, again, it was based on a Tennessee law. In dissent, there was a dissent by Judge Griffin, but also relied on a Tennessee law, which says that it is not defense if the police action is unlawful. Does the shortness of the time of the stop make a difference here? I'm sorry? Does the shortness of the length or the time of the stop make a difference here? I think it makes no difference. The Fourth Amendment law is clear that it is not, the reasonableness is not based on the time. And sometimes two minutes can be too much, and sometimes an hour is not unreasonable time. And the law is pretty clear on that, that it has to be based on totality of circumstances. And here it developed quickly. The driver, he was stopped, he was searched, he was arrested. It took three minutes to do that. And any prolonging after three minutes was unreasonable on the fact of these cases. I would just touch upon one other case, Supreme Court case, Illinois v. Wardlow, where the Supreme Court said that flight from a high crime area can provide a reasonable suspicion. That case is distinguishable from this. In that case, it was, number one, unprovoked flight. The police officer, the convoy of the police car, dissented on the area. A young man saw them and started running. And it was that unprovoked flight that the Supreme Court said provided reasonable suspicion. In a concurring opinion by Justice Stevens, he pointed out that the court did not adopt a bright-line rule that any flight gives rise to reasonable suspicion that should always be judged by the totality of the circumstances. And in that case, it was that unprovoked flight. In this case, it was provoked flight because the officer, what they were doing, they were overreaching. They were doing something they should not do, something that was unreasonable and unconstitutional. And Mr. Cheatham had every right to resist that. They provoked him to flee by asking him to get out of the car? By engaging in this overreaching action, asking him to get out of the car with his hands raised up, with his fingers interlocked, even though he was doing nothing criminal, and even though the driver was arrested. What were they supposed to do with the car and the passenger? Hey, we arrested the driver, take care? They could tell Mr. Cheatham that they're arresting the driver, that he is free to go. They could tell him they're impounding the car. You have to get out of the car if they're going to impound him? Yeah, he would probably have to get out of the car to impound him. But the officer testified that they ordered him, both of them, that they ordered him out of the car to escort him to a police car so they can search him for weapons and drugs. That was unambiguous testimony by both officers. Even though there was nothing indicating he was armed, there was nothing indicating he was dangerous, there were no drugs found on the driver. There was simply no reason for doing that. All right. Thank you very much. Thank you. Do you have any rebuttal? Yes, Your Honor. First, to address the issue of the colloquy that my opposing counsel mentioned that Officer Butler had with the court, if the court would like to review that itself, that's docket number 30 of the district court's file at page ID 107. And I do disagree with my colleague's characterization. Officer Butler testified that Judge Neff asked Officer Butler a couple of questions about if my husband and I had been in a car and there had been no taillights and he said he didn't have a license, would you have taken him out and put him in the backseat of the patrol car? And Officer Butler said, yes, likely yes. These are all circumstances specific, but he said the answer would likely yes. Yes, Your Honor. And then the district court followed up by asking, would you additionally have ordered me out? And Officer Butler said, based on the totality of the circumstances, I make that evaluation case by case. If I had no observations at all, no reason to believe that you were involved, then there's a chance I would not have. And then he followed up and said, my partner was the person who asked Mr. Cheatham out of the vehicle, and after he got his sense of the stop, I wasn't the one who asked Mr. Cheatham out, Officer Nevins was the one. So I disagree with the characterization that the officer said he wouldn't have ordered the district court out. In any event, I think that's really to one side here. The stop was ongoing at the time that the officers approached Mr. Cheatham. It wasn't complete as a matter of law. The officers hadn't completed their diligence. And more, stepping back to the general Terry standard that there must be a proper basis for the traffic stop and the stop must be reasonably limited in scope. Here it absolutely was. The stop was reasonable in duration, as Your Honor pointed out, two minutes and 30 seconds in. And additionally, it was reasonable in investigative means. The officers, at the point that they approached Mr. Cheatham, had only engaged in the core activities that officers, diligent officers, are empowered to do and, in fact, instructed to do under the Fourth Amendment. Can you take the position that if the arrest did not complete the traffic stop, that the officers could approach the vehicle, order Mr. Cheatham out, tell him to put his hands above his head and interlace his fingers and pat him down? Is that your position? No, Your Honor. I would stop just short of the pat down. And that is short of the pat down. Whether or not the arrest is completed, where the nub is, how far do they get to go with Mr. Cheatham, no matter what? No matter where you are on the arrest? It depends on where we are in the Fourth Amendment seizure, the Terry process. Here, the Terry stop was not complete. It involved a vehicle. Accordingly, Mr. Cheatham could be ordered out of the vehicle and ordered to lace his hands above his head for officer safety, and that is exactly what happened here. What is your best case for saying that there is a bright-line rule that ordering someone out of the car includes the ability to demand that they raise their hands and interlock their fingers? Not that it's a reasonableness determination. We have the reasonableness determination made by this district court. I'm asking you, is there a bright-line rule that you can point me to in the law? Well, Your Honor, if I can just separate out the reasonable suspicion factors, there needs to be no reasonable suspicion to order Mr. Cheatham out. To order him out. Okay, so let's begin there. There needs to be no reasonable suspicion to say, passenger, get out of the car. That's exactly right. Where does the necessity for reasonable suspicion attach? Reasonable suspicion would need to attach in order to complete a pat-down or in order to detain Mr. Cheatham individually beyond the original detention, to prolong the stop beyond the bounds of the original Terry stop. So reasonable suspicion of some sort of criminal activity permits the officers to prolong what would have been the reasonable scope of the traffic stop. Is there a distinction between requiring someone to leave a vehicle and, no, strike that. Is the seizure distinct from asking someone to step out of the vehicle? I say, passenger, you need to get out of the vehicle. That's a removal from the vehicle during the process. When I say to the passenger, face the car, put your hands over your head, interlace your fingers, is that the seizure stop? That's still within the bounds. That's an officer safety component within the scope of the original Terry stop. Absolutely. So you would say that is not a seizure and does not require any probable cause, any reasonable suspicion, nothing? Well, the entire Terry stop, Your Honor, is a seizure. There's no doubt here that Mr. Cheatham was seized. He was lawfully seized under the Fourth Amendment pursuant to a traffic stop. So it's absolutely part of a seizure. But it is not a set of activities beyond the scope of that seizure. It is that ordering him out and ordering him to put his hands above his head is within the Fourth Amendment province of that Terry stop, the seizure of Mr. Cheatham pursuant to a traffic stop. And you think the breakdown point is pat down? Yes, Your Honor. I see that you're out of time. Thank you, Your Honor. Thank you for your presentation. Case is submitted. You may call the next case.